ESTATE OF RODNEY V. LINDEROTH, DECEASED, JEAN M. LINDEROTH, EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Linderoth v. Commissioner
Docket No. 13182-84.
United States Tax Court
T.C. Memo 1986-547; 1986 Tax Ct. Memo LEXIS 65; 52 T.C.M. (CCH) 1014; T.C.M. (RIA) 86547; November 12, 1986. Edward J. Hanigan, for the petitioner. A. Chris Zimmermann, for the respondent. SHIELDS
MEMORANDUM OPINION SHIELDS, Judge: Respondent determined a deficiency of $69,871.74 in the *67 Federal estate tax of the Estate of Rodney V. Linderoth (petitioner). After concessions, the only issue for decision is the amount of the marital deduction to which the estate is entitled. The facts in this case have been fully stipulated and are so found.The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Rodney V. Linderoth ("decedent") died on May 29, 1980 at the age of 54 a resident of Las Vegas, Nevada. His widow, Jean M. Linderoth who was also a resident of Las Vegas, qualified as the executrix of his estate. Under the terms of his will decedent's household goods, clothing, automobiles, personal effects, jewelry and other tangible personal property were bequeathed to the widow. The remainder of the estate was devised to the Bank of New York and Charles J. Garvey as trustees under a trust agreement which decedent had executed on August 28, 1979. Insofar as applicable here, the trust agreement provided that upon the death of the decedent, the trustees were to set aside as a separate trust (Trust A) for his widow cash, securities or other property having a value equal to the maximum marital deduction allowable to the decedent's estate *68 for federal estate tax purposes. The balance of the trust estate was to be set aside as a separate trust (Trust B) for the decedent's widow and certain other relatives. At his death decedent jointly owned with his wife a residence having a total value of $428,000. It was encumbered by deeds of trust securing two promissory notes totaling $231,860.99. Since the residence constituted community property under Nevada law one-half of its value or $214,000 and one-half of the debt secured by the deeds of trust or $115,930.49 are attributable to decedent and must be taken into consideration in determining the amount of estate tax due from his estate. The problem in this case stems from the fact that at the death of decedent the trustees under his trust agreement set aside his interest in the residence as part of Trust A, the marital deduction trust for the widow, and the parties cannot agree on the manner in which the marital deduction is to be computed under section 2056. Provision for the martial deduction appears in section 2056(a) [1] which states that there is to be deducted from the gross estate: an amount equal to the value of any interest in property which passes or has passed *69 from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate. Under section 2056(c)(1) in effect at decedent's death in 1980 the marital deduction was limited to 50 percent of the adjusted gross estate. [2] Under section 2056(c)(2) the "adjusted gross estate" was computed by subtracting from the "entire value of the gross estate" the deductions allowed by sections 2053 and 2054 including certain losses, funeral and administration expenses, claims against the estate, and of particular importance here: for unpaid mortgages on, or any indebtedness in respect of, property where the value of the decedent's interest therein, undiminished by such mortgage or indebtedness, is included in the value of the gross estate. [Section 2053(a)(4).] *70 With respect to estates containing community property, section 2056(c)(2)(B) provided that the adjusted gross estate was to be computed by subtracting from the entire value of the gross estate the decedent's interest in the community property and a pro rata share of the deductions allowed under section 2053 and 2054. Under section 2056(c)(2)(B)(iv) the pro rate share of the allowable deductions was to be: an amount which bears the same ratio to the aggregate of the deductions allowed under sections 2053 and 2054 which the value of the property included in the gross estate, diminished by * * * [the value of the community property the decedent held], bears to the entire value of the gross estate. Section 20.2056(c)-2(a)(4), Estate Tax Regulations, contains the following equation for determining the pro rata portion of the deductions allowed under sections 2053 and 2054: gross estate, less community property / entire gross estate X deductions for expenses, indebtedness, taxes and losses. Using the above equation petitioner contends that the allowable marital deduction in this case is $277,405 computed as follows: Value of residence
428,000
Less encumbrances
231,860
196,140
Decedent's share (1/2)
98,070
Decedent's share of other
Community property
1,349
Total Community Property
99,419
Decedent's separate property
852,059
Gross estate
951,478
Less: Community property
99,419
Pro rata share of
deductions other
than encumbrances
on residence
[3] 297,249
396,668
Adjusted gross estate
554,810
Marital Deduction (50%)
277,405
*71 Using the same equation respondent contends that the allowable marital deduction is $247,276 computed as follows: Value of residence
428,000
Less Wife's share of residence
214,000
Decedent's share of residence
214,000
Add Decedent's Share of other
Community property
1,349
Total Community property
215,349
Decedent's separate property
852,059
Gross estate
1,067,408
Less: Community Property
215,350
Pro rate share of
deductions
[4] 357,506
572,856
Adjusted gross estate
494,552
Marital deduction (50%)
247,276
From the above computations it is apparent that the basic disagreement between the parties is over the point in the calculation at which the encumbrances on the residence are to be subtracted. In its computation petitioner subtracted the encumbrances from the value of the community property in determining the gross estate, used the smaller gross estate as the denominator in the fraction for determining the pro rata share of deductions, and applied that fraction to the non-encumbrance deductions. On the other hand, respondent *72 determined the value of the gross estate without deducting the encumbrances on the residence, used the larger gross estate as the denominator of the fraction, and applied that fraction to the estate's total deductions, including the encumbrances. Each party contends that its method is in accordance with section 20.2053-7, Estate Tax Regulations, which states: A deduction is allowed from a decedent's gross estate of the full unpaid amount of a mortgage upon, or of any other indebtedness in respect of, any property of the gross estate, including interest which had accrued thereon to the date of death, provided the value of the property, undiminished by the amount of the mortgage or indebtedness, is included in the value of the gross estate. If the decedent's estate is liable for the amount of the mortgage or indebtedness, the full value of the property subject to the mortgage or indebtedness must be included as part of the value of the gross estate; the amount of the mortgage or indebtedness being in such case allowed as a deduction. But if the decedent's estate is not so liable, only the value of the equity of redemption (or the value of the property, less the mortgage or indebtedness) *73 need be returned as part of the value of the gross estate. * * * [Emphasis supplied.] Petitioner contends that under the above regulation its computation is correct because the value of the residence exceeds the encumbrances and, therefore, under the one action rule set out in section 40.430(1) [5] of the Nevada Revised Statutes the decedent's estate is not liable for the encumbrances. Respondent, on the other hand, contends that the estate is at least potentially liable on the encumbrances and, therefore, the full value of decedent's interest in the residence is includable in the gross estate and the encumbrances are to be treated as debts of the estate. We agree with respondent because while the Supreme Court of Nevada has held that "a trust deed is within the intendment of NRS 40.430" [McMillan v. United Mortgage Co.,82 Nev. 117, 412 P.2d 604 (1966)] it has also held that where the property subject to a deed of trust is not sufficient to satisfy the underlying note an ancillary attachment of other property is permissible.
*74 See Halfon v. Title Insurance Co.,97 Nev. 421, 634 P.2d 660 (1981); Nevada Land and Mortgage Co. v. Hidden Wells Ranch, Inc.,83 Nev. 501, 435 P.2d 148, 200 (1967). [6] Consequently this case is indistinguishable from Colwell v. United States,676 F.2d 550 (Ct. Cl. 1982), where the decedent, a resident of Texas, owned both separate and community property.The community property with a value of $222,650 was subject to mortgages totaling $137,392 on which the decedent and his estate were liable "for any deficiency the property did not satisfy." With respect to the same equation we have before us [section 20.2056(c)-2(a)(4), Estate Tax Regs.] the court there stated: The specific question in applying the formula is whether the indebtedness applicable to the community property is to be deducted initially from the gross value of that property (as plaintiff contends) or is to be taken into account only in a later stage of the calculation (as the defendant did). We hold for the defendant. [676 F.2d at 551.] * * * The government's calculations also effectuate the purpose of the formula. The formula is designed to permit *75 the proper allocation of the estate's total deductible expenses between community and noncommunity property. To do this necessarily requires that all the deductions, and not just some of them, be so allocated. [676 F.2d at 553.] We conclude, therefore, that respondent's computation of the marital deduction is correct. To reflect the foregoing, Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise provided. ↩
2. This limitation was removed by the Economic Recovery Tax Act of 1981, Pub. L. No. 97-34, section 403(a)(1) 95 Stat. 301. As a result, the particular question involved herein can no longer arise.↩
3. 951,478 - 99,419 / 951,478 X 331,932↩
4. 1,067,408 - 215,349 / 1,067,048 X 447,862↩
5. Section 40.430(1) of the Nevada Revised Statutes (1981), the one action rule, provides in pertinent part that: [t]here shall be but one action for the recovery of any debt, or for the enforcement of any right secured by mortgage or lien upon real estate, which action shall be in accordance with the provisions of this section and NRS 40.440 to 40.459↩, inclusive. In such action the judgment shall be rendered for the amount found due the plaintiff, and the court shall have power * * * to direct a sale of the encumbered property * * * and apply the proceeds of the sale to * * * the amount due to the plaintiff.
6. We also note that the one action rule is an affirmative defense which is waived unless the debtor asserts it as a defense to a suit upon the underlying obligation. Keever v. Nicholas Beers Co.,96 Nev. 509, 611 P.2d 1079, 1082 (Nev. Sup. Ct. 1980); Nevada Wholesale Lumber v. Myers Realty,92 Nev. 24, 544 P.2d 1204, 1208 (1978); Hyman v. Kelly,1 Nev. 179 (1865). Furthermore, in spite of the one action rule, a junior lienor, who without fault has lost his security by the foreclosure of a senior lien is permitted to bring a personal action on his note. Keever,supra at 1083; McMillan v. United Mortgage Co.,84 Nev. 99, 437 P.2d 878, 879↩, (1968).